UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANCES CHALFANT,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | No. CV 10-1684-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 18, 2010, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on April 7, 2010, and April 9, 2010. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 12, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

## BACKGROUND

Plaintiff was born on November 30, 1962. [Administrative Record ("AR") at 29, 56.] She has a high school education and past relevant work experience as a collections clerk. [AR at 29-30, 110-23, 126-27, 131.]

On April 3, 2006, plaintiff protectively filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since July 1, 2004, due to fibromyalgia and spinal cord problems. [AR at 9, 56-57, 91-96, 107-09, 124-32.] After plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 60-64, 67-73, 75.] A hearing was held on January 8, 2008, at which time plaintiff appeared with counsel and testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 26-55.] On April 17, 2008, the ALJ issued an unfavorable decision. [AR at 6-16.] When the Appeals Council denied plaintiff's request for review of the hearing decision on January 21, 2010, the ALJ's decision became the final decision of the Commissioner. [AR at 1-3.] This action followed.

III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform

1  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
2  case of disability is established. The Commissioner then bears the burden of establishing that the
3  claimant is not disabled, because she can perform other substantial gainful work available in the
4  national economy. The determination of this issue comprises the fifth and final step in the
5  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
6  at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since July 1, 2004, the alleged onset date of disability.[1]  [AR at 11.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the spine, fibromyalgia, and a left shoulder disorder. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 12.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a limited range of light work.[3]  [AR at 12.] Specifically, the ALJ concluded that plaintiff is capable of "lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for eight hours out of an eight hour day, and standing/walking for six hours out of an eight hour day except that she must be able to change position briefly for one to three minutes every hour. [Plaintiff] is precluded from climbing ladders/scaffolds, but can occasionally climb stairs, bend, balance, stoop, k[n]eel, crouch and crawl. She is limited to occasional reaching above shoulder level, and is precluded from working at unprotected heights and being around dangerous and fast moving machinery."

---

[1]  The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through June 30, 2009. [AR at 11.]

[2]  RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]  Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

[Id.]  At step four, the ALJ concluded that plaintiff can perform her past relevant work as a collection clerk.  [AR at 15.]  Accordingly, the ALJ found plaintiff not disabled.  [AR at 15-16.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly: (1) consider the physical and mental demands of plaintiff's past relevant work; (2) consider the treating doctor's opinion regarding the side effects of plaintiff's medication; (3) develop the record; and (4) consider plaintiff's subjective complaints and credibility.  [Joint Stipulation ("JS") at 2-3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    PLAINTIFF'S CREDIBILITY AND SUBJECTIVE SYMPTOMS**

Plaintiff contends that the ALJ failed to consider her subjective symptoms and improperly rejected her credibility.  [JS at 20-23.]

At the hearing, plaintiff testified that she is "in pain all the time" and that her pain changes depending on whether she is sitting, standing, walking, or lying down.  [AR at 39.]  Specifically, plaintiff explained that it is difficult for her to sit for any length of time, and that she gets "a little bit of ease" when she is lying down.  [AR at 39-40.]  Plaintiff testified that she underwent spinal surgery in October 2005[4] during which time she had a titanium cage inserted at L5-S1.  Plaintiff further explained that before her surgery, she had difficulty urinating and walking, and that after her surgery, she was able to urinate and her pain "eased up" a little bit, but did not go away completely.  [AR at 40-43.]  She testified that when she continued to experience back pain, her doctor ordered another MRI of her back and found that the titanium cage at L5-S1 is now "sitting on a nerve."  [AR at 40, 42.]  Plaintiff stated that she had several nerve block procedures (with more scheduled after the hearing) to treat her lower back pain and explained that if the nerve

---

[4] Plaintiff's treatment records and the ALJ's decision indicate that plaintiff's spine surgery actually occurred in November 2002.  [AR at 13, 263.]

blocks do not alleviate her pain, then she and her doctors are "going to have to figure out what to do about [the] titanium cage that's sitting on a nerve." [AR at 40.] In addition to her lower back pain, plaintiff testified that she has suffered from fibromyalgia pain in her shoulders, arms, lower back, hips, knees, and elbows for 13 years that is now "really getting bad." [AR at 41, 46.] She also testified that she had shoulder surgery scheduled on February 4, 2008 (i.e., after the hearing) for a torn rotator cuff. [AR at 40.] Additionally, plaintiff also testified that her medications make her drowsy, give her stomach problems, and make it difficult for her to concentrate. [AR at 50.]

When the record contains medical evidence of underlying impairments that are reasonably likely to cause the alleged symptoms, medical findings are not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying Bunnell to subjective physical complaints). Under such circumstances, an ALJ can reject a plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The following factors may be considered in weighing a plaintiff's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

/
/

Here, because the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to justify her credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding that plaintiff's medical condition would reasonably produce the alleged symptoms, the ALJ found plaintiff's statements "concerning the intensity, persistence and limiting effects" of her symptoms to be "not credible to the extent they are inconsistent with the ... residual functional capacity assessment." [AR at 13.] The ALJ discounted plaintiff's subjective complaints because she found that: (1) the medical evidence indicated that plaintiff "has been responsive" to surgical and more conservative treatment; and (2) plaintiff's daily activities undermine her subjective symptoms and limitations. [AR at 14.] As discussed below, the Court has considered the ALJ's reasons for finding plaintiff not credible, and concludes that they are neither clear nor convincing.

First, although responsiveness to medical treatment can in some cases constitute a proper reason to discredit a plaintiff's credibility (see Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)), here, plaintiff's medical records indicate that she was not as responsive to the treatment of her chronic pain symptoms as the ALJ suggested in the decision. To support this reason, the ALJ noted that after plaintiff underwent spine surgery in November 2002, her records through January 2003 "reflected [plaintiff] had a positive response to surgery and wanted to return to work." [AR at 13, citing AR at 170.] The ALJ also cited an October 2005 MRI study of plaintiff's lumbar spine revealing "multi level facet joint degenerative disease and evidence of a status post surgical fusion abutting the traversing right S1 nerve root without significantly displacing it," as well as plaintiff's treating physician's opinion that the MRI showed a "successful interbody fusion at L5-S1." [AR at 13, citing AR at 280, 290.] The ALJ then asserted that plaintiff's treating records thereafter showed "no manifestations of chronic pain" [AR at 13, citing AR at 291, 342], and noted that plaintiff requested physical therapy in November 2005, but discontinued it before she completed all of her prescribed sessions. [AR at 13, citing AR at 285.]

---

[5] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so. The medical expert testified that he found no evidence that plaintiff was malingering. [AR at 49.]

7

To the extent the ALJ has construed the evidence as indicating that plaintiff did not suffer from chronic pain symptoms after her 2002 surgery, such a construction is not supported by the evidence, as a review of plaintiff's treatment records dated after her surgery indicate that she continued to suffer from and received treatment for persistent back and fibromyalgia pain. [See AR at 176, 181, 185, 232, 235, 237-42, 285-302, 311-12, 316-24, 329-31, 341-43, 350, 357-58, 361-62, 378-81, 403, 424-25, 427-30.] The ALJ's failure to consider these records was error, as she may not consider only those portions of the medical evidence that favor her ultimate conclusion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"). Further, insomuch as the ALJ implied that plaintiff stopped attending physical therapy sessions because her symptoms had improved, such a implication is not supported by the record. Rather, the record indicates that plaintiff discontinued physical therapy after "[s]he continued to have complaints of pain with all activities," the physical therapists were "[u]nable to effectively change [plaintiff's] pain symptoms," and she was "unable to tolerate physical therapy service." [See AR at 285-86.] To the extent the ALJ misconstrued this evidence to support her rejection of plaintiff's credibility, that was erroneous. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion).

The ALJ also cited a report from Dr. Paul A. Reisch interpreting an October 2007 MRI, which Dr. Reisch said showed an interval development of L2-L3 disc degeneration since the 2005 MRI, but no significant change in the surgical fusion at the L5-S1 level. [See AR at 13, citing AR at 415-16.] To the extent the ALJ was relying on Dr. Reisch's report to show that plaintiff's condition had not significantly worsened from October 2005 to October 2007 (even though plaintiff had developed new moderate disc degeneration since 2005), that was erroneous because Dr. Reisch did not offer such an opinion, and "[t]he ALJ may not substitute [her] own layman's opinion for the findings and opinion of a physician." Gonzalez Perez v. Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); see also Ferguson v. Schweiker, 765 F.2d 31, 37 (3rd Cir. 1985) (holding ALJ erred by "independently reviewing and interpreting the laboratory reports" and thus "impermissibly substituted his own judgment for that of a physician"). Moreover, the ALJ

failed to also mention the November 14, 2007, Neurosurgery Consultation Note by Dr. Ali H. Mesiwala[6] and the November 27, 2007, Pain Medicine Consultation by Dr. Bryan X. Lee, in which those physicians respectively interpreted the October 2007 MRI as showing (in addition to the L2-L3 disc degeneration noted by Dr. Reisch) "a small right L5-S1 posterior disc bulge ... that contacts the S1 nerve root," and "L3-L4 and L4-L5 facet joint disease". [See AR at 424-25, 427-29.] These three physicians' reports appear to be objective medical evidence supporting plaintiff's allegations of chronic back pain continuing after her 2002 spine surgery, and it was erroneous for the ALJ to misconstrue or ignore these reports to support her rejection of plaintiff's symptoms. See Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports her conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

Finally, the ALJ noted that plaintiff's pain symptoms improved with treatment such as biofeedback, medications, daily exercises, and lumbar facet injections. [AR at 13, citing AR at 329, 350.] However, the record shows that even when plaintiff explained that she received *some* improvement in her level of pain -- i.e., after she received facet injections -- she still described her pain level as at least 5 out of 10 and constant [AR at 231, 351-53, 355-56, 357-60, 401], with the exception of one follow up visit in which she described her lower back pain level as 4 out of 10. [See AR at 399.] Further, it appears that any relief plaintiff did receive from her back pain may not have been permanent, as the record indicates that the positive effects of plaintiff's facet injections only lasted approximately seven months. [See AR at 370-74, 401.] Since the record supports plaintiff's testimony that she experienced continuing and substantial pain symptoms -- even when

---

[6] The ALJ only cited Dr. Mesiwala's November 14, 2007, Note to support the ALJ's assertion that plaintiff was not found to be a surgical candidate for her complaints of lower back and right buttock pain. [AR at 13, citing AR at 423.] But such an assertion is not wholly accurate because Dr. Mesiwala opined in his Note that it would be best for plaintiff to first try nerve root blocks or epidural injections before considering a second surgery. Dr. Mesiwala continued, however, that if such treatment failed in the long term, then additional procedures "could be considered." [AR at 425.] It was improper for the ALJ to selectively reference Dr. Mesiwala's Note in this regard. Day, 522 F.2d at 1156.

treatments improved her pain somewhat -- the Court cannot find, when considered together with the ALJ's selective consideration of the medical record as described above, that the ALJ has presented a clear and convincing reason based on plaintiff's response to medical treatment for rejecting her credibility or for finding her able to engage in gainful employment activity. See Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person ... makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Craig v. Astrue, 2010 WL 114474, at *4 (N.D. Cal. Jan. 7, 2010) (ALJ improperly found plaintiff not disabled, where her "symptoms could have improved in some respects," but the ALJ misstated and divorced some of the medical evidence from the "complex nature of [p]laintiff's symptoms" and did not "connect the improvement of [p]laintiff's ... symptoms with a[n] ... ability to engage in gainful employment activity"); Bennett v. Barnhart, 264 F.Supp.2d 238, 256 (W.D. Pa. Feb. 25, 2003) (the mere fact that a claimant functions well on medication is not necessarily indicative of the claimant's ability to perform basic work activities).

Second, the ALJ failed to adequately explain how plaintiff's daily activities undermine her credibility concerning her subjective symptoms. A claimant's ability to engage in some physical activities is not necessarily inconsistent with a finding of disability. See Gallant, 753 F.2d at 1453. Rather, an ability to take part in physical pursuits bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations. See Reddick, 157 F.3d at 722. The Ninth Circuit has held that the ALJ may reject a claimant's symptom testimony if she "is able to spend a substantial part of her day performing ... activities that are transferable to a work setting." Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996); Bunnell, 947 F.2d at 346. In the decision, the ALJ asserted that plaintiff's daily activities consisted of walking her dog for a couple of blocks two to three times a week, swimming a couple of times a month, cooking, visiting with friends a couple of times a week, going to dinner and the movies, and using her computer to research medical topics. The ALJ also noted that plaintiff took a five-day vacation to Hawaii. [AR at 14.] The ALJ asserted that these activities reflected plaintiff's "significant function," thus undermining the credibility of her subjective symptoms. [Id.]

/

1 Plaintiff's activities do not support the ALJ's rejection of her subjective complaints or the
2 ALJ's conclusion that she is able to sustain gainful employment, as none of plaintiff's activities
3 translate into an ability to do activities that are "transferable to a work setting." See Fair v. Bowen,
4 885 F.2d 597, 603 (9th Cir. 1989). At the hearing, plaintiff testified that she sees her friends two
5 or three times a week and that they usually come to her home where they sit and talk and maybe
6 drink coffee. [AR at 35.] Plaintiff further testified that she has a computer at home that she uses
7 "[a] couple of times a week" to look up information concerning her medical condition and to check
8 her e-mail. [AR at 35-36.] She testified that her son usually brings her food from the restaurant
9 where he works, but that she also fixes herself food to eat. [AR at 37.] She said that she sees
10 her ex-husband three times a week and that he usually takes her to dinner or the movies or comes
11 over to her home to help her pay bills. [AR at 39.] Plaintiff also explained that she gets exercise
12 by walking her dog one block two or three times a day and by swimming "a little bit ... [m]aybe a
13 couple of times a month." [AR at 37-38.] Plaintiff further testified that she went on a five-day trip
14 to Hawaii a year before the hearing. [AR at 41.]

15 The fact that plaintiff has friends who come to visit her at her home and that she goes to
16 dinner and the movies with her ex-husband does not render her subjective complaints incredible,
17 as she is not required to "vegetate in a dark room excluded from all forms of human and social
18 activity" in order to be found disabled. Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981); see
19 also Reddick, 157 F.3d at 722 ("disability claimants should not be penalized for attempting to lead
20 normal lives in the face of their limitations"). Plaintiff's occasional computer use also does not
21 undermine her subjective symptoms because there is no indication that plaintiff used her computer
22 for substantial periods of time or in a manner consistent with what would be required in a work
23 environment. See Peck v. Comm'r of Soc. Sec. Admin., 266 Fed.Appx. 582, 584 (9th Cir. 2008)
24 (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ's conclusion that
25 plaintiff's alleged symptoms were inconsistent with his computer use was not supported by the
26 record, where it was not apparent that plaintiff performed this activity in a manner transferrable to
27 the work setting). Further, that plaintiff sometimes prepares meals for herself does not call into
28 question her allegation of disabling pain because the ability to perform some household chores

1 or activities is not necessarily inconsistent with a finding of disability. See Gallant, 753 F.2d at
2 1453 (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite
3 the claimant's ability to cook and wash dishes). Plaintiff's activities of walking one block two or
4 three times a day (or up to one-quarter of a mile a day [see AR at 13, 361]) and swimming a little
5 a couple of times a month also do not undermine her subjective symptoms, because the Ninth
6 Circuit has expressly held that "walking ... and swimming are not necessarily transferable to the
7 work setting with regard to the impact of pain[, as] [a] patient may do these activities *despite* pain
8 for therapeutic reasons, but that does not mean she could concentrate on work despite the pain
9 or could engage in similar activity for a longer period given the pain involved." Vertigan v. Halter,
10 260 F.3d 1044, 1050 (9th Cir. 2001). Here, plaintiff's exercise activities of walking and swimming
11 were apparently therapeutic, as her medical records reflect that her physicians recommended that
12 she get daily exercise, including by exercising in the pool. [See, e.g., AR at 238, 362.] Finally,
13 plaintiff's vacation to Hawaii does not inherently negate her allegations of pain and other
14 symptoms, and the ALJ provided no explanation as to why she found plaintiff's ability to partake
15 in such a vacation incompatible with plaintiff's complaints. Nor is it apparent from plaintiff's
16 testimony about her trip that she spent a "substantial part" of her time performing any physical task
17 that translates to the work environment. See Smolen, 80 F.3d at 1284 n.7. For these reasons,
18 the ALJ has not convincingly shown that plaintiff's activities are inconsistent with her alleged
19 limitations so as to support a finding that plaintiff is not credible or not disabled.

20 "While an ALJ may certainly find testimony not credible and disregard it ..., [courts] cannot
21 affirm such a determination unless it is supported by specific findings and reasoning." Robbins
22 v. Soc. Sec. Admin., 466 F.3d 880, 884-85 (9th Cir. 2006). For the above reasons, the Court finds
23 that the ALJ erred by failing to provide clear and convincing reasons for discounting plaintiff's
24 subjective testimony. Thus, remand is warranted on this issue.

25 */*
26 */*
27 */*
28

B.   **TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ erred in rejecting the opinion of treating physician Dr. Geeta Patwa that plaintiff's pain medication causes her to feel drowsy and affects her ability to concentrate. [JS at 12-14.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285. Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); Social Security Ruling[7] 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

The record shows that plaintiff received medical treatment from Dr. Patwa from May 2005 to at least January 2008. [See AR at 175-84, 383-97, 403-17, 419-21, 423-25, 430.] In a letter

---

[7] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

dated January 18, 2008, Dr. Patwa stated that plaintiff has a history of chronic back and neck pain as well as fibromyalgia, that she underwent surgery for a ruptured disc, had left shoulder fusion surgery, was scheduled for shoulder surgery in February 2008 for a left rotator cuff injury, and was receiving epidural injections and nerve block treatments from a pain management specialist. [AR at 430.] Dr. Patwa opined that plaintiff was unable to work because of "constant back pain due to her lumbar dis[c] disease" and because "she is not able to walk much or sit for long periods of time." [Id.] Dr. Patwa also noted that plaintiff's pain medication "makes her drowsy and not able to concentrate." [Id.]

In the decision, the ALJ rejected Dr. Patwa's opinion that plaintiff is disabled due to constant back pain requiring medication that makes her drowsy and unable to concentrate. Specifically, the ALJ found that Dr. Patwa's opinion was inconsistent with plaintiff's "acknowledged activities of doing research on the computer, reading, or watching television for several hours a day." [AR at 15.] The ALJ further asserted that Dr. Patwa's disability finding was "overall unsupported by objective findings, is inconsistent with the records showing some improvement with conservative care, and is contradictory to the other substantial medical opinion." [Id.] For the reasons explained below, the Court concludes that the ALJ provided insufficient reasons for rejecting Dr. Patwa's treating opinion.

In addition to plaintiff's testimony concerning her occasional computer use described above, plaintiff testified that she watches television before she goes to bed at night. [AR at 34.] Plaintiff also stated that she does not sleep well and gets up three or four times per night, and that she watches television or reads things like the newspaper, the Enquirer, and the Bible when she cannot sleep. [AR at 34-36.] Although an ALJ may properly reject a treating physician's opinion concerning a claimant's limitations that is inconsistent with the claimant's reported daily activities (see Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999)), here, it is not clear that plaintiff's activities of reading, watching television, and occasional computer use, are inconsistent with Dr. Patwa's opinion that plaintiff's medication side effects of drowsiness and difficulty concentrating would interfere with her ability to work. Specifically, there is no indication in plaintiff's testimony -- or in the ALJ's discussion of plaintiff's activities -- that plaintiff's activities

of reading, watching television, or using her computer require a level of concentration comparable to what would be required in a work setting or that these activities consumed a substantial part of her day. Accordingly, the activities cited by the ALJ were not inconsistent with the side effect limitations assessed by Dr. Patwa and thus did not constitute a specific and legitimate reason for rejecting Dr. Patwa's treating opinion. See Soto-Cedeño v. Astrue, 380 Fed.Appx. 1, 4 (1st Cir. 2010) (citable for its persuasive value pursuant to First Circuit Rule 32.1.0) (plaintiff's statement that she watched television did not justify the ALJ's rejection of the treating physician's assessment that plaintiff suffered from memory deficits, inattentiveness, and an inability to concentrate, as plaintiff's "ability to watch TV does not show her ability to perform the mental tasks necessary for work"); Orn, 495 F.3d at 639 ("reading[ and] watching television ... are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace"); Blau v. Astrue, 263 Fed.Appx. 635, 636-37 (9th Cir. 2008) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (finding plaintiff's activities consistent with her reported symptoms of fatigue, pain, and memory loss, where none her "activities consume[d] a substantial part of her day or require[d] extended periods of concentration"); Peck, 266 Fed.Appx. at 584 (plaintiff's activities of watching television and using a computer were not necessarily inconsistent with the alleged disability, as it was not clear that plaintiff performed those activities in a manner transferable to a work setting); Vertigan, 260 F.3d at 1049-50 (plaintiff's activities, including reading and watching television, were not inconsistent with her pain symptoms, where the activities did not consume a substantial part of her day and were not transferrable to the work setting); Wright v. Astrue, 2009 WL 2827576, at *14 (D. Or. Aug. 24, 2009) (plaintiff's daily activities of reading and watching television were consistent with her allegedly severe pain).

Next, the ALJ's bare assertion that Dr. Patwa's opinion was not sufficiently supported by the treatment record or the objective medical findings is not a proper reason, by itself, for rejecting the opinion because it fails to reach the level of specificity required for rejecting a treating physician's opinion. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of

specificity our prior cases have required ... The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted). In any event, as described above, the ALJ erred in selectively considering the medical evidence. As such, the Court cannot conclude that the ALJ accurately considered the medical evidence in finding that Dr. Patwa's opinion was inconsistent with plaintiff's response to treatment, "contradictory to the other substantial medical opinion,"[8] or unsupported by objective evidence. [AR at 15.] Accordingly, the ALJ is directed to consider Dr. Patwa's opinion, including the finding that plaintiff's ability to work would be impacted by her medication's side effects of drowsiness and difficulty concentrating, after the medical evidence as a whole has been reconsidered.[9]

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider plaintiff's subjective symptoms and credibility as well as Dr. Patwa's opinion. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/

---

[8] It is not readily apparent from the ALJ's decision which "substantial medical opinion" the ALJ determined contradicted Dr. Patwa's opinion. [AR at 15.] The ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). The ALJ's rejection of Dr. Patwa's opinion without expressly setting forth detailed, legitimate reasons for doing so was improper. See Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3).

[9] As the Court finds remand warranted for the reasons described above, the Court exercises its discretion not to consider plaintiff's remaining contentions of error.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 6, 2011

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE